UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| JOSEPH GABEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-CV-334-DCP |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 15]. Now before the Court are Plaintiff's Motion for Summary Judgment [Doc. 21] and Defendant's Motion for Summary Judgment [Doc. 23]. Joseph Gabel ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Kilolo Kijakazi ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

## I. PROCEDURAL HISTORY

On September 12, 2018, Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, claiming a period of disability that began on August 1, 2017 [Tr. 15, 156–57]. After his application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ [*Id.* at 60–84, 87–88]. A

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration ("the SSA") on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit. *See* 42 U.S.C. § 405(g).

video hearing was held on September 16, 2021 [*Id.* at 32–59]. On November 26, 2019, the ALJ found that Plaintiff was not disabled [*Id.* at 12–25]. The Appeals Council denied Plaintiff's request for review on September 28, 2020 [*id.* at 1–4], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on December 2, 2020, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.   ALJ FINDINGS

The ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2.  The claimant has not engaged in substantial gainful activity since August 1, 2017, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease, lumbar stenosis, left shoulder impairment status post surgery, depression, and anxiety (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can never climb ladders, ropes or scaffolds; can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; should have the option to sit or stand after half an hour to shift position for 1-2 minutes without being away from the workstation; should avoid hazards including moving machinery; and is further limited to understanding, remembering and carrying out simple, routine, repetitive, non-complex tasks with occasional contact with supervisors, co-workers, and the general public.

2

6. The claimant is unable to perform any past relevant work. (20 CFR 404.1565).

7. The claimant was born on March 27, 1988 and was 29 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2017, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 17–25].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

3

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

4

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§ 423(d)(2)(A).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is

5

"based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e). An RFC is the most a claimant can do despite his limitations. § 404.1545(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.    ANALYSIS

Plaintiff claims the ALJ committed multiple errors when evaluating the physical evidence, rendering the final determination of Plaintiff's physical RFC unsupported by substantial evidence. Plaintiff contends the ALJ also erred in determining Plaintiff's mental RFC and that the ALJ's decision lacks the support of substantial evidence in this regard as well. Plaintiff therefore alleges that the ALJ failed to evaluate the disability claim in accordance with the appropriate standards and requirements, and he requests for the Court to vacate the Commissioner's final decision and remand this matter for further administrative proceedings, including but not limited to a *de novo* hearing and a new decision. The Commissioner maintains that the ALJ's evaluation of Plaintiff's impairments is supported by substantial evidence and requests that her final decision be affirmed. As explained below, the Court finds that the ALJ properly determined Plaintiff's physical and mental RFCs in accordance with the relevant SSA rules and regulations, and substantial evidence supports the ALJ's decision.

6

### A.    ALJ's Determination of Plaintiff's Physical RFC

Plaintiff claims the ALJ's evaluation of the evidence relating to his physical limitations and the resulting physical RFC finding are deficient for several reasons.  Those reasons include that the ALJ (1) failed to properly assess the medical opinion of Steven K. Jacobs, M.D. ("Dr. Jacobs"), (2) improperly discredited Plaintiff's credibility concerning his physical impairments, and (3) failed to account for Plaintiff's carpal tunnel syndrome in the physical RFC finding.

#### 1.    *ALJ's Evaluation of Dr. Jacobs's Opinion*

Plaintiff argues the ALJ failed to properly assess Dr. Jacobs's opinion pursuant to the SSA's new rules for evaluating medical opinions.  As a threshold matter, because Plaintiff's claim was filed after March 27, 2017, the Social Security Administration's ("SSA") new regulations for evaluation of medical opinion evidence apply to this claim.  *See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  Under the new revised regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings, including those from your medical sources."  20 C.F.R. § 404.1520c(a).  The Commissioner will "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the following factors:    1) supportability; 2) consistency; 3) the source's relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; 4) the source's specialized area of practice; and 5) other factors that would tend to support or contradict a medical opinion, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements.

7

20 C.F.R. §§ 404.1520(a), (c)(1)–(5). However, supportability and consistency are the most important factors. 20 C.F.R. § 404.1520c(b)(2).

Moreover, the revised regulations have set forth new articulation requirements for ALJs in their consideration of medical opinions, stating:

> **(1) Source-level articulation.** Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually;
>
> **(2) Most important factors.** The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record;
>
> **(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue.** When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. §§ 404.1520c(b)(1)–(3) (emphasis added); *see, e.g.*, *Kilgore v. Saul*, No. 1:19-cv-168-DCP, 2021 WL 932019, at *11 (E.D. Tenn. Mar. 11, 2021). Guided by these provisions in its analysis, the Court now turns to Dr. Jacobs's opinion which it summarizes as follows:

8

On March 11, 2014, Dr. Jacobs submitted a narrative report detailing his treatment of Plaintiff's back pain. Dr. Jacobs first saw Plaintiff for an evaluation on July 16, 2013. Dr. Jacobs noted Plaintiff was 25 years old at that time and had been in a motor vehicle accident on September 16, 2011. Dr. Jacobs related that Plaintiff had been rear-ended while driving, resulting in injuries to his neck and back. Dr. Jacobs stated Plaintiff had been undergoing pain management and physical therapy following the accident and had undergone two successful shoulder procedures performed by John Handago, M.D. ("Dr. Handago"); however, Plaintiff's neck and back pain persisted. Dr. Jacobs noted that Plaintiff complained of back pain radiating into the left hip and leg and of some neck pain that was less bothersome than the back pain. Dr. Jacobs reviewed imaging done on Plaintiff and stated that an MRI of his lumbar spine demonstrated a left paracentral herniated disc at L5-S1, and he noted the herniated disc at L5-S1 had increased in size from a lumbar MRI performed in January of 2013 as compared to an MRI performed in November 2011.

Dr. Jacobs stated Plaintiff denied having back pain prior to the motor vehicle accident and noted Plaintiff's condition had not improved with conservative measures. Dr. Jacobs related that on August 15, 2013, Plaintiff underwent a lumbar laminectomy at L5-S1 with decompression of the S1 nerve roots. At that time, Plaintiff was found to have marked segmental instability at L5-S1, and he underwent fusion with bone at L5-S1 and internal fixation with titanium pedicle screws and rods at L5-S1.

Plaintiff next saw Dr. Jacobs for a follow-up examination on September 3, 2013, and he reported experiencing less back and leg pain and was otherwise happy with the results of his operation. Dr. Jacobs examined Plaintiff again on September 17, 2013, and he noted Plaintiff was making steady improvement with his back pain and had some of the expected incisional discomfort. Dr. Jacobs prescribed Motrin and Flexeril for Plaintiff. Plaintiff was examined again on October 14, 2013, and Dr. Jacobs stated he continued to make slow but steady improvement with his back pain. Dr. Jacobs started Plaintiff on a physical therapy program. Dr. Jacobs reexamined Plaintiff on November 18, 2013, and he noted Plaintiff had some

9

continued back discomfort. Dr. Jacobs prescribed a lumbar back brace and a TENS unit for proprioceptive pain relief, referred Plaintiff to another physician for pain management and trigger point injections, and gave Plaintiff a return to work note. Dr. Jacobs last saw Plaintiff on January 14, 2014, and he noted Plaintiff was continuing with pain management, undergoing physical therapy, and returning to work on light duty on a part-time basis.

Dr. Jacobs stated it was his opinion within a reasonable degree of medical certainty that Plaintiff's motor vehicle accident was a competent producing cause of the lumbar stenosis and marked segmental instability at the time of surgery. Dr. Jacobs related that Plaintiff's diagnosis was a lumbar stenosis and lumbar radiculopathy with segmental instability. Dr. Jacobs stated the motor vehicle accident was a competent producing cause of the surgery performed on August 15, 2013. Dr. Jacobs believed Plaintiff's prognosis was "guarded" at that time.

Dr. Jacobs stated Plaintiff "will have a permanent disability as a result of the motor vehicle accident and the surgery necessitated by the accident." Dr. Jacobs related that Plaintiff will have a permanent loss of range of motion of the lumbar spine on the order of 8 percent as the L5-S1 level has been fused, he will be at increased risk of injury to the L4-5 level given the fact the level below (L5-S1) had been fused. Dr. Jacobs opined that Plaintiff "will have permanent limitations in terms of what he can and cannot do by virtue of the fact that one segment of the lumbar spine has been fused." Dr. Jacobs concluded by noting Plaintiff would need six months to one year of pain management and rehabilitation.

[*See* Tr. 225–26].

The ALJ acknowledged Dr. Jacobs's opinion, stating:

> The opinion by Steven K. Jacobs on March 11, 2014 that the claimant would have a permanent disability is neither valuable nor persuasive because opinions on whether a person is disabled are reserved to the Commissioner.

[Tr. 23 (citing Tr. 226; 20 C.F.R. § 404.1520b(c)(3)(i))].

Plaintiff notes that, pursuant to § 404.1520b(c)(3)(i), the ALJ was not required to assess the aspects of Dr. Jacobs's opinion that specifically concerned the issue of disability [Doc. 22 p. 13]. However, Plaintiff argues "Dr. Jacobs's opinion concerning Plaintiff's impairments is not just limited to the issue of disability or appears to be conclusory" [*id.* at 14]; thus, the ALJ was required to evaluate the remaining aspects of the opinion that concerned Plaintiff's physical impairments. Plaintiff states Dr. Jacobs found that Plaintiff had a permanent loss of range of motion of the lumbar spine, increased risk of injury at L4-L5 levels, and marked segmental instability. Plaintiff argues he was prejudiced by the ALJ's failure to properly evaluate this part of Dr. Jacobs's opinion, as the final physical RFC finding could have been more limited had the ALJ's evaluation been appropriate. Plaintiff claims the ALJ should have evaluated Dr. Jacobs's opinion using the § 404.1520c factors and that the ALJ's failure to do so prevents the Court from finding the decision to be supported by substantial evidence.

The Commissioner argues the ALJ properly evaluated Dr. Jacobs's opinion because she appropriately found that Dr. Jacobs's statement that Plaintiff had a permanent disability was neither valuable nor persuasive, as such a finding is reserved for the Commissioner pursuant to 20 C.F.R. § 404.1520b(c)(3)(i). In any case, the Commissioner contends the ALJ was not required to evaluate Dr. Jacobs's opinion because it was "dated" and issued prior to the relevant period, beginning with Plaintiff's alleged onset date of August 1, 2017, and it is not an "opinion" as defined under the revised regulations, 20 C.F.R. § 404.1513(a)(2) [Doc. 24 pp. 10, 11].

For the reasons below, the Court finds that Dr. Jacobs's letter does not constitute a formal medical opinion as defined under the SSA's rules and regulations. Moreover, the ALJ acknowledged and assessed Dr. Jacobs's letter, at least in part, and the Court finds the ALJ implicitly discredited it, as the ALJ mentioned the letter prior to finding that Plaintiff worked for

11

years following his accident and eventually achieved full spinal range of motion by November 2018 [*See* Tr. 20]. The Court further finds the ALJ appropriately disregarded the portions of Dr. Jacobs's letter that delved into issues concerning the finding of disability, because the ultimate issue of disability is reserved for the Commissioner.

In accordance with the social security regulations, an ALJ is required to consider all relevant medical and other evidence in determining a claimant's RFC. 20 C.F.R. § 404.1520(e). As to medical opinions and prior administrative findings, the new regulations provide that the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Nevertheless, in adjudicating a claim, an ALJ must still "articulate how [s/he] considered the medical opinions and prior administrative medical findings." *Id.*

The Commissioner's contention that the ALJ was not required to consider Dr. Jacobs's letter because it was written prior to Plaintiff's alleged onset date is without merit. The Sixth Circuit has recognized that medical records predating the alleged disability onset date may be relevant when evaluated in combination with later evidence as they may assist in establishing a claimant's disability. *DeBoard v. Comm. of Soc. Sec.,* 211 F. App'x. 411, 414 (6th Cir. 2006); *see also Stephenson v. Kijakazi*, No 1:20-CV-113-DCP, 2021 WL 4302407, at *12 (E.D. Tenn. Sept. 21, 2021) (quoting *DeBoard*); *Mullen v. Comm'r of Soc. Sec.*, No. 18-13828, 2020 WL 2738247, at *11 (E.D. Mich. Apr. 16, 2020) ("district courts in this circuit have recognized that medical evidence predating the alleged onset date can sometimes be probative of disability during the relevant period, particularly 'where evidence before or after the relevant period shows findings indicative of an ongoing or chronic impairment that does not improve or fluctuate.'") (quoting *Hill v. Comm'r of Soc. Sec.*, No. 17-10089, 2018 WL 1404416, at *8 (E.D. Mich. Feb. 27, 2018)).

12

Moreover, as previously stated, § 404.1520(e) requires an ALJ to consider all relevant medical evidence in determining a claimant's RFC. Thus, the Court rejects the Commissioner's contention that Dr. Jacobs's March 2014 letter was essentially irrelevant because it predated Plaintiff's alleged August 2017 onset date. Nevertheless, the Court concludes that the ALJ was not required to analyze Dr. Jacobs's letter under the § 404.1520c factors for assessing medical opinions, because Dr. Jacobs's letter does not constitute an "opinion" as that term is defined under the relevant SSA rules and regulations.

As an initial matter, the Court notes that there is no dispute that at least part of Dr. Jacobs's opinion delves into issues specifically reserved for the Commissioner. Dr. Jacobs's statement that Plaintiff "will have a permanent disability" is the exact kind of evidence that is inherently neither valuable nor persuasive, as it is a statement that Plaintiff is disabled. *See* 20 C.F.R. § 404.1520b(c)(3)(i). Thus, the ALJ was not required to offer any analysis regarding that statement. With respect to the remainder of Dr. Jacobs's letter, the question of whether the ALJ gave the additional information proper consideration hinges on whether the information constitutes a medical opinion or "other medical evidence." As more fully explained below, the Court does not find that the additional information can be considered Dr. Jacobs's "medical opinion" under C.F.R. § 404.1515(a)(2), and, thus, the ALJ was not required to explain how she considered the information as "other medical evidence." 20 C.F.R. § 404.1520c (stating only that the ALJ is required to articulate how he considered medical opinions and prior administrative findings).

For claims filed on or after March 27, 2017, the term "medical opinion" is defined as follows:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities:

13

(i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

(ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(iv) Your ability to adapt to environmental conditions, such as temperature or extremes of fumes.

20 C.F.R. § 404.1513(a)(2). The Court agrees with the Commissioner that Dr. Jacobs's letter does not appear to qualify as a "medical opinion" under the relevant rules, as it fails to adequately indicate what Plaintiff "can still do" despite his impairments, as Dr. Jacobs made no reference to how Plaintiff may or may not be able to perform the physical demands of any specific work activities.

In his opinion, Dr. Jacobs stated that Plaintiff:

will have a permanent loss of range of motion of the lumbar spine on the order of 8 percent as the L5-S1 level has been fused. He will be at increased risk of injury to the L4-5 level given the fact that the level below; i.e., L5-S1, has been fused. [Plaintiff] will have permanent limitations in terms of what he can and can not do by virtue of the fact that one segment of the lumbar spine has been fused.

[Tr. 226] (emphasis added). While Dr. Jacobs mirrored the standard for classification of a "medical opinion" under § 404.1513(a)(2) by writing that Plaintiff "will have permanent limitations in terms of what he can and can not do," the Court finds this vague statement is insufficient to categorize the letter as a medical opinion. In his letter, Dr. Jacobs provided no insight as to how Plaintiff would be able to perform the physical demands of any *specific* work

activities, *see* 20 C.F.R. § 404.1513(a)(2)(i), and the Court finds Dr. Jacobs's statements are too vague to warrant being classified as a medical opinion.

At most, the remainder of Dr. Jacobs's opinion qualifies as "other medical evidence," which is defined as "evidence from a medical source that is *not* objective medical evidence or a medical opinion, including judgments about the severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed response, or prognosis." 20 C.F.R. § 404.1513(a)(3) (emphasis added). The ALJ is required to articulate how he considered medical opinions and prior administrative findings but is not required to explain how he considered other medical evidence. *Haupt v. Comm'r of Soc. Sec. Admin.* No. 3:20-CV-01517, 2021 WL 6773092, at *7 (N.D. Ohio Sept. 1, 2021), *report and recommendation adopted*, 2022 WL 294834 (N.D. Ohio Feb. 1, 2022) ("Other than Dr. Jha's opinion that Claimant cannot work, the letter discussed Claimant's diagnoses, his compliance with treatment, and his symptoms. None of this additional information can be considered Dr. Jha's 'medical opinion.'") (citing 20 C.F.R. §§ 404.1513 & 404.1520c).

For those reasons, the Court finds that the ALJ appropriately disregarded Dr. Jacobs's letter as being neither valuable nor persuasive under the SSA's rules and regulations because portions of it were an opinion about whether Plaintiff is disabled—an issue expressly reserved to the Commissioner—and the remainder was at most other medical evidence, such that the ALJ was not required to articulate how she considered it.

Notwithstanding the above finding, the Court finds substantial evidence exists demonstrating that the ALJ properly considered Dr. Jacobs's letter. The ALJ stated that Dr. Jacobs found Plaintiff would have a permanent disability [Tr. 226], which is a legal determination reserved exclusively for the Commissioner [Tr. 20]. However, the ALJ also reviewed the

15

treatment notes and clearly gave them little or no weight. For example, directly after citing Plaintiff's September 2011 accident and his spinal fusion surgery with post-operation changes in August 2013, the ALJ went on to discuss Plaintiff's continued work through 2017 and the November 1, 2018, consultative exam that indicated Plaintiff had "full range of motion of his spine" except for flexion and extensions limitations due to pain [*Id.*]. This indicates the ALJ considered the relevant portion of Dr. Jacobs's letter and found it to be inconsistent with more recent medical and non-medical evidence. Furthermore, the Court finds that the relevant portion of Dr. Jacobs's letter would constitute, at best, other medical evidence under 20 C.F.R. § 404.1513, and the ALJ may not outright disregard such evidence but ultimately "has discretion to determine the proper weight to afford" it. *See Davis v. Comm'r of Soc. Sec.*, No. 5:19-CV-2929, 2021 WL 2642953, at *5 (N.D. Ohio June 28, 2021) (citing *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007)).

The Court therefore finds that any error in the ALJ's assessment of Dr. Jacobs's letter was harmless because the ALJ considered the evidence and discussed the portion of the letter addressing Plaintiff's back injury in its entirety and as it related to the other evidence of record. And, the ALJ appropriately found that the portion of the letter delving into the ultimate issues of disability should not be considered. The Court finds the ALJ properly considered the evidence in assessing the alleged severity of Plaintiff's limitations and in formulating the final RFC. "Ultimately, the ALJ is not required to discuss every treatment noted in the medical record in detail, 'so long as they consider the evidence as a whole and reach a reasoned conclusion.'" *Wolfenbarger o/b/o Wolfenbarger v. Saul*, No. 3:18-CV-326-HBG, 2019 WL 4738265, at *9 (E.D. Tenn. Sept. 27, 2019) (quoting *Boseley v. Comm'r of Soc. Sec.*, 397 F. App'x 195, 199 (6th Cir. 2010); *see also Kissling v. Comm'r of Soc. Sec.*, No. 1:5-CV-0807, 2016 WL 4136525, at *3 (W.D.

16

Mich. Aug. 4, 2016) ("The failure to more fully discuss Dr. Marder's treatment notes is not, in and of itself, an error requiring reversal."); *Conroy v. Comm'r of Soc. Sec. Admin.*, No. 5:15CV1789, 2016 WL 3971305, at *7 (N.D. Ohio July 25, 2016) ("The ALJ's failure to cite to cumulative information in Dr. Eider's treatment notes is not error; the ALJ is not required to discuss each individual treatment note in detail."). Furthermore, the ALJ found that Plaintiff's back and shoulder impairments supported exertional, postural, and sit/stand limitations, which were incorporated into the RFC [Tr. 19]. *See Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243, 249–50 (6th Cir. 2015) ("[T]he ALJ's failure to state weight given to a treating physician's opinion may be a harmless error where he adopts the opinion of the treating source) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547–48 (6th Cir. 2004)). Remand is not warranted on this basis.

2. *ALJ's Evaluation of Plaintiff's Subjective Allegations of Disabling Physical Impairments*

Plaintiff argues the ALJ failed to sufficiently support her decision to discredit Plaintiff's credibility regarding his alleged physical impairments. Specifically, Plaintiff contends the ALJ did not indicate what evidence served as the basis for discrediting Plaintiff's allegations and his credibility during the hearing, meaning the ALJ's assessment of Plaintiff's credibility lacks the support of substantial evidence. The Commissioner contends that a plaintiff's credibility regarding their alleged impairments is an appropriate basis for an ALJ to consider as part of the disability determination and that the ALJ's assessment of Plaintiff's credibility was sufficient in this case because the ALJ considered the factors under 20 C.F.R. § 404.1529.

A claimant's subjective complaints are but one of many factors an ALJ is to consider when making the RFC finding. *See* 20 C.F.R. § 404.1545(a)(3). When a disability determination that would be fully favorable to the plaintiff cannot be made solely based on the objective medical evidence, an ALJ must analyze the symptoms of the plaintiff, considering the plaintiff's statements

17

about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 20 C.F.R. § 404.1529(c)(3):

> In evaluating subjective complaints of disabling pain, this court looks to see whether there is objective medical evidence of an underlying medical condition, and if so, then 1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or, 2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Stanley v. Sec'y of Health & Hum. Servs.*, 39 F.3d 115, 117 (6th Cir. 1994) (citing *Jones v. Sec'y, Health & Hum. Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991); *see also Chopka v. Saul*, No. 5:18CV945, 2019 WL 4039124, at *6 (N.D. Ohio Aug. 27, 2019).

The Social Security Administration has clarified "that subjective symptom evaluation is not an examination of an individual's character . . . ." SSR 16-3p, 2017 WL 5180304, *2 (S.S.A. Oct. 25, 2017) (effective Mar. 28, 2016); *see Davis v. Comm'r of Soc. Sec. Admin.*, No. 3:19-CV-117, 2020 WL 3026235, at *6 (S.D. Ohio June 5, 2020), *report and recommendation adopted sub nom.*, No. 3:19-CV-117, 2020 WL 6273393 (S.D. Ohio Oct. 26, 2020) (discussing SSR 16-3p). When evaluating a claimant's subjective complaints, the Social Security Administration "will review the case record to determine whether there are explanations for inconsistencies in the individual's statements about symptoms and their effects, and whether the evidence of record supports any of the individual's statements at the time he or she made them." SSR 16-3p.

The ALJ must consider certain factors when evaluating a claimant's alleged symptoms, including complaints of pain. Those factors are:

> (i) the claimant's daily activities;
>
> (ii) the location, duration, frequency, and intensity of the pain or other symptoms;
>
> (iii) precipitating and aggravating factors;

18

(iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the pain or other symptoms;

(v) treatment, other than medication, a claimant receives or has received for relief of pain or other symptoms;

(vi) any measures the claimant takes or has taken to relieve the pain or other symptoms; and

(vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529. The decision need not contain discussion and citations as to every possible factor to be sufficiently specific. *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 664 (6th Cir. 2004).

An ALJ's determination of a claimant's credibility regarding statements concerning his symptoms is to be afforded "great weight and deference," and courts "are limited to evaluating whether . . . the ALJ's explanations for partially discrediting [a claimant's testimony] are reasonable and supported by substantial evidence in the record." *Schmiedebusch v. Comm'r of Soc. Sec. Admin.*, 536 F. App'x 637, 649 (6th Cir. 2013) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475–76 (6th Cir. 2003)); *see also Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (noting that SSR 16-3p removed the term "credibility" to "clarify that subjective symptom evaluation is not an examination of an individual's character"); *Barber v. Kijakazi*, No. 1:20-0064, 2022 WL 209268, at *6 (M.D. Tenn. Jan. 24, 2022), *report and recommendation adopted*, 2022 WL 853208 (M.D. Tenn. Mar. 22, 2022) (explaining that although the Commissioner removed the term "credibility" when SSR 16-3p was implemented, "there appears to be no substantive change in the ALJ's analysis and nothing to indicate that case law pertaining to credibility evaluations" has been abrogated (citation omitted)). Factual

19

determinations are the domain of the ALJ, and "[a]s long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). An ALJ may consider the inconsistencies between a claimant's subjective allegations and the medical evidence—as the ALJ did here when discounting Plaintiff's allegations concerning the severity of his impairments. *See Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) ("The ALJ reasonably discounted [Plaintiff's] testimony concerning the severity of her pain because her testimony was inconsistent with the medical evidence in the record."); *see also* Social Security Ruling 16-3p ("We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with the objective medical evidence and the other evidence.").

In her decision, the ALJ found that Plaintiff's

> medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . .

[Tr. 20]. The ALJ explicitly referred to the § 404.1529(c)(3) factors and SSR 16-3p in the decision and stated, "there are several reasons why the claimant's allegations of debilitating symptoms are not entirely supported by the record" [Tr. 21]. The ALJ first noted that Plaintiff's description of his daily activities was not limited to the extent one would expect given his complaints of disabling symptoms and limitations [*Id.*]. The ALJ considered that—at a consultative examination—Plaintiff had a full squat, full range of motion in all areas except his hip, full strength in his upper and lower extremities and grip with no evidence of muscle atrophy, a negative straight leg raise test, and physiologic and equal deep tendon reflexes in his upper and lower extremities [*Id.* (citing

Tr. 456–57)]. The ALJ also considered Plaintiff's testimony that he was able to do chores if they do not involve bending, he retained the ability to bathe and dress himself, he goes to the grocery store and for walks on trails and to the park with his daughter, and he is able to drive himself [*Id.*]. As to his driving, the ALJ stated "[h]is driving independently shows the ability to get in and out of the car despite his claim of issue with bending, and that he is able to use his arms to steer and turn his neck to navigate traffic" [*Id.*]. The ALJ noted that Plaintiff had received treatment for his alleged disabling impairments; however, the ALJ stated the treatment was "essentially routine" [*Id.*].

The Court finds that the ALJ's assessment of Plaintiff's subjective allegations regarding the severity of his physical impairments was appropriate. As detailed above, the ALJ considered, among other things, the minimal examination findings, the limited treatment Plaintiff received, and Plaintiff's reported daily activities, all of which suggested Plaintiff was not as physically limited as he claimed. Accordingly, the ALJ's assessment of Plaintiff's credibility should not be disturbed in this case because the ALJ adequately considered the § 404.1529(c)(3) factors, and the bar for setting aside the ALJ's credibility assessment is extremely high. *See Smith v. Halter*, 307 F.33 377, 379 (6th Cir. 2001) (courts "may not disturb" an ALJ's credibility determination "absent [a] compelling reason."); *see also Payne v. Comm'r of Soc. Sec.*, 404 F. App'x 109, 113 (6th Cir. 2010) (the Sixth Circuit has instructed that "[t]he ALJ's credibility findings are unchallengeable."). Plaintiff has not met the lofty burden to warrant setting aside the ALJ's credibility findings.

3.      *ALJ's Failure to Find the Additional Physical Impairment of Carpal Tunnel Syndrome at Step Two*

Plaintiff argues that the objective evidence established that he suffered from the additional severe impairment of carpal tunnel syndrome. Plaintiff claims the ALJ's failure to find this additional impairment prejudiced him, as this impairment likely would have had more than a slight

21

impact on his performance of work activities. In addition, Plaintiff contends the ALJ failed to meet her burden at Step Five to show that Plaintiff could perform other work existing in significant numbers in the national economy because she failed to account for Plaintiff's manipulative limitations stemming from his carpal tunnel syndrome, and the jobs the ALJ found Plaintiff could perform require frequent use of the hands.

Plaintiff correctly states that the burden of establishing a severe impairment is a "*de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (discussing 20 C.F.R. §§ 404.1520(c) & 404.1521) (citing *Murphy v. Sec'y of Health & Hum. Servs.*, 801 F.2d 182, 185 (6th Cir. 1986)). Although the standard for establishing a severe impairment is *de minimis*, a claimant still has the burden to prove that the impairment or combination of impairments significantly limits his physical and mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). The Commissioner notes that this case is similar to *Higgs v. Bowen* because there is "nothing in the objective medical record credibly suggesting that [plaintiff] was significantly affected" by carpal tunnel syndrome during the relevant period [Doc. 24 p. 13 (quoting *Higgs*, 880 F.2d at 863). The Court agrees with the Commissioner.

Here, the only evidence Plaintiff presents to establish he suffered from carpal tunnel syndrome stems from a diagnostic examination performed by Larisa Bruma, M.D. ("Dr. Bruma"), on April 25, 2019 [Tr. 484–86]. Plaintiff states that Dr. Bruma's examination "showed a prolonged peak of latencies in both median nerves across the wrist" [Doc. 22 p. 19 (citing Tr. 486)]. Plaintiff further contends that the record "contains objective evidence that Plaintiff had carpal tunnel syndrome before the date last insured . . . . [and] that this impairment would likely have more than a slight impact on [his] performance of other work activities" [*Id.* (citing Tr. 484–86)].

By contrast, Paul Mercurio, M.D. ("Dr. Mercurio"), noted during a consultative examination that Plaintiff's hand and finger dexterity was intact, and his grip strength was 5/5 bilaterally [Tr. 457].  In addition, Dr. Mercurio stated Plaintiff had "[n]o limitation for reaching or handling objects" [*Id.*].  The Court agrees with the Commissioner that the ALJ did not err by omitting Plaintiff's carpal tunnel syndrome from the list of severe impairments and by not incorporating manipulative limitations into the physical RFC.  Plaintiff has not met his burden to show that his carpal tunnel syndrome resulted in manipulative limitations that significantly limited his physical ability to do basic work activities.  As the Commissioner argues, Plaintiff's position is premised on the notion that the diagnosis of an impairment is enough to meet the burden to show a disabling limitation, but even Plaintiff's cited authority does not support such a finding.  *Higgs*, 880 F.2d at 863 ("mere diagnosis . . . says nothing about the severity of the condition") (citing *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988) (diagnosable impairment not necessarily disabling).

Accordingly, the Court finds Plaintiff has not presented a valid basis for remand of his case based on the ALJ's formulation of his physical RFC.

**B.    ALJ's Determination of Plaintiff's Mental RFC**

Plaintiff claims the ALJ erred in formulating his mental RFC as well.  Plaintiff asserts the ALJ's evaluation of Plaintiff's mental limitations is erroneous because (1) the ALJ improperly discredited the opinion of consultative psychological examiner Alison Murphy, Ph.D. ("Dr. Murphy"), and (2) inappropriately evaluated Plaintiff's mental complaints.  The Commissioner maintains that the ALJ's evaluations of Dr. Murphy's opinion and of Plaintiff's subjective allegations were appropriate and that the ALJ's determination of Plaintiff's mental RFC is supported by substantial evidence.  The Court will address the parties' arguments in turn.

23

1.    *ALJ's Evaluation of Dr. Murphy's Opinion*

Plaintiff states that Dr. Murphy determined he had moderate limitation in his abilities to sustain an ordinary routine and regular attendance at work; interact adequately with supervisors, co-workers, and the public; regulate emotions, control behavior, and maintain well-being; as well as mild limitations in his abilities to understand, remember, or apply complex directions and instructions [Doc. 22 p. 22 (citing Tr. 464)].   Plaintiff relates that Dr. Murphy opined that the evaluation results were consistent with psychiatric problems and could significantly interfere with Plaintiff's ability to function on a daily basis [*Id.*].   Plaintiff takes issue with the ALJ's determination that Plaintiff's statements to Dr. Murphy were inconsistent with statements made to other treatment providers and with the ALJ's implication that Plaintiff was malingering.

In her decision, the ALJ found Dr. Murphy's opinion to be "partially persuasive" [Tr. 23]. The ALJ noted that Dr. Murphy opined to Plaintiff having

> a mild limitation on his ability to understand, remember and apply complex directions; a moderate limitation on his ability to interact adequately with supervisors, co-workers, and the public; a moderate limitation on his ability to sustain an ordinary routine and regular attendance at work; and a moderate limitation on his ability to regulate emotions, control behavior, and maintain well-being.

[*Id.* (citing Tr. 464)].

The Court has utilized the same framework for reviewing the ALJ's assessment of Dr. Murphy's opinion as previously described, *see supra* pp. 7–8, and finds that the ALJ appropriately articulated how she considered the opinion in accordance with the SSA's rules and regulations.   In her analysis, the ALJ directly addressed the consistency and supportability factors and referenced relevant portions of the record to support her findings [Tr. 23].   As to consistency, the ALJ stated that Dr. Murphy's opinion was "largely consistent with the results of her own examination" [*Id.*] However, the ALJ noted that Plaintiff's statements to Dr. Murphy concerning his symptoms were

24

not consistent with his statement to other treatment providers, suggesting that Plaintiff's impairments were not as severe as what Dr. Murphy opined [*Id.*]. Thus, the ALJ considered that

> while among other symptoms the claimant had described [to Dr. Murphy] crying spells, hopelessness, worthlessness, irritability and distractibility, at a doctor's appointment a month earlier he denied having depression or anxiety, and a few days after the consultative examination the claimant described his mental health issues as well controlled by medication.

[*Id.* (citing Tr. 461–62, 471, 473)]. As to supportability, the ALJ found that Dr. Murphy's opinion was "supported by the limited history and treatment the claimant has received" [*Id.*].

Despite finding Dr. Murphy's opinion to be only partially persuasive, the ALJ still limited Plaintiff to simple, routine, repetitive, non-complex work with only occasional contact with supervisors, coworkers, and the general public [Tr. 19]. Thus, the ALJ appears to have accounted for Dr. Murphy's opinion that Plaintiff had mild limitations in understanding and applying complex directions, moderate limitations in interacting with others, and a moderate limitation in sustaining an ordinary routine [Tr. 464].

For the foregoing reasons, the Court finds the ALJ appropriately articulated how she assessed Dr. Murphy's opinion because she adequately explained how she perceived the supportability and consistency of the opinion, and her assessment is supported by substantial evidence.

2.    *ALJ's Evaluation of Plaintiff's Subjective Allegations of Disabling Mental Impairments*

Plaintiff argues in closing that the record of evidence supports a finding that he was experiencing ongoing symptoms of depression and anxiety [Doc. 22 pp. 23–25]. Plaintiff cites to various treatments notes in his brief, seemingly to demonstrate that his depression and anxiety

were more severe than what the ALJ found or at least that his symptoms fluctuated considerably over time. The Court finds Plaintiff's argument is without merit.

While the record may contain evidence of more severe limitations and although Plaintiff would interpret the evidence differently, the Court finds the ALJ's determination was within her "zone of choice." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and that, as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant (quotations omitted)); *see also Huizar v. Astrue*, No. 3:07-CV-411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings.").

Furthermore, it appears that Plaintiff is inviting the reweighing of the evidence in this case, and "the court will not reweigh the evidence considered by the ALJ." *Seibert v. Comm'r of Soc. Sec.*, No. 17-13590, 2019 WL 1147066, at *2 (E.D. Mich. 2019) (citing *Big Ranch Res., Inc. v. Ogle*, 737 F.3d 1063, 1074 (6th Cir. 2013)). Substantial evidence of an alternative conclusion in the record is not sufficient to reverse an ALJ's decision. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).

The Court finds the ALJ appropriately examined the totality of the evidence and found Plaintiff's complaints of debilitating mental impairments were inconsistent with the record as a whole. *See* 20 C.F.R. § 404.1529; S.S.R. 16-3p; *see also supra* pp. 17–20. The evaluation of a claimant's subjective complaints rests with the ALJ and should not be disturbed absent

"compelling reasons." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

The ALJ cited numerous portions of the record to support her analysis of Plaintiff's mental complaints. For example, the ALJ noted that, at his psychiatric consultative examination, Plaintiff "showed some difficulty remembering objects due to nervousness and anxiety, but he displayed average intellectual functioning, and [at] appointments, [his] memory was observed to be intact" [Tr. 18, 463, 436, 439, 441]. While Plaintiff's girlfriend reported he can be difficult to live with and evidence showed that he did not socialize a great deal, Plaintiff testified at the disability hearing and stated at a doctor's appointment that his anxiety was well controlled by medication, and he was reported to be cooperative and able to maintain adequate social skill in his manner of relating" [Tr. 18, 47, 435, 438, 462, 464]. Plaintiff reported some difficulty in maintaining his concentration on tasks like reading; however, he could count and do simple calculations and serial sevens at his psychiatric consultative examination [Tr. 18, 463]. In addition, the ALJ noted that Plaintiff testified that he was able to regularly attend appointments, drive, help care for his daughter and his dog, dress and groom himself, and manage his own money [*Id.*].

The Court finds the ALJ's analysis of Plaintiff's mental complaints was appropriate. The ALJ extensively reviewed the record, including the medical evidence, the opinions evidence, Plaintiff's hearing testimony and reported daily activities, and Plaintiff's treatment history and success with managing his mental impairments through medication.

Accordingly, the Court finds that Plaintiff has not presented a valid basis to remand the Commissioner's final decision.

27

## VI.    CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 21**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 23**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

Debra C. Poplin
United States Magistrate Judge